Mark E. Hindley
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 328-3131

Attorneys for Plaintiff



IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| UNITED SHIPPING SOLUTIONS, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> BEN WHITESIDES, an individual; MATTHEW LARSON, an individual; and ORANGE COUNTY LOGISTICS, LLC, a Nevada limited liability company, <br><br> Defendant. | **COMPLAINT** <br><br> Judge Bruce S. Jenkins <br> DECK TYPE: Civil <br> DATE STAMP: 09/27/2006 @ 15:11:14 <br> CASE NUMBER: 2:06CV00815 BSJ |

Plaintiff, United Shipping Solutions ("USS"), hereby alleges against Ben Whitesides, Matt Larson, (collectively, the "Individual Defendants") and Orange County Logistics, LLC as follows:

### PARTIES

1.  USS is a Utah limited liability company located in Midvale, Utah. USS has done business as Freight Savers Express.

2.  On information and belief, Ben Whitesides ("Whitesides") is an individual residing in California.

3.  On information and belief, Matt Larson ("Larson") is an individual residing in California.

SaltLake-286558.8 0099895-00208

4. On information and belief, Orange County Logistics ("OC Logistics") is a Nevada limited liability company formed, owned, and/or managed by Whitesides and Larson.

## JURISDICTION & VENUE

5. This Court possesses jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. In addition, the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest, costs and attorneys' fees. This Court possesses jurisdiction to issue a declaratory judgment under 28 U.S.C. § 2201.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## GENERAL ALLEGATIONS

**Individual Defendants Form USS Franchisees.**

7. USS is a reseller of freight services to businesses through a franchise system. USS is an authorized reseller of shipping services for DHL and other partner carriers. USS currently has franchise organizations throughout the United States.

8. Sometime in or around 2002, Whitesides formed several Utah limited liability companies to become franchises of USS. These companies included Teramo, LLC ("Teramo"), and BW Enterprises (collectively, the "Whitesides Franchisees").

9. Sometime in or around 2004, Larson formed a partnership with Jim Beidleman to operate two USS franchises in Honolulu (the "Larson Franchisees").

**The Franchise Agreements.**

10. The Whitesides Franchisees signed separate but identical Franchise Agreements with USS on or about July 15, 2002 (the "Franchise Agreement") for franchises in Salt Lake City and Ogden. The Franchise Agreements are attached hereto as Exhibits A and B.

11. On or about October 15, 2004 the Larson Franchisees signed separate but identical Franchise Agreements with USS. These Franchise Agreements are attached hereto as Exhibits C and D.

12. Paragraph 7 of the Franchise Agreements is entitled "Limitations on Activities of Business." In that Paragraph, Individual Defendants agreed that

> the Franchise will not engage in activities other than those specifically approved in this Agreement . . . or in writing by FRANCHISOR. FRANCHISEE further agrees that it must obtain FRANCHISOR'S prior written consent to offer or sell any products or services (including any air express or other services) other than those approved in this Agreement."

Franchise Agreements ¶ 7.1.

13. Paragraph 21 of the Franchise Agreements is entitled "Noncompetition" (the "Noncompetition Provision") and defines the "Franchisee" as including "collectively, individually, each shareholder, member, partner, officer and director, and each direct or indirect holder . . . of any beneficial interest in FRANCHISE." Franchise Agreements ¶ 21.1.

14. The Noncompetition Provision also states that the

> FRANCHISEE agrees that during the term of the Franchise, FRANCHISEE will not, directly or indirectly, for itself, or through, on behalf of or in conjunction with any person or entity, divert or attempt to divert any business or customer of the Franchise, FRANCHISOR, or any FREIGHT SAVERS EXPRESS Franchisee to any competitor or other person by inducement or otherwise.

Franchise Agreements ¶ 21.2

15. In the Noncompetition Provision, Individual Defendants agreed to not solicit USS employees or independent contractors during the term of the franchise and for two years following the termination or expiration of the franchise. Specifically, the Franchise Agreements state that:

> FRANCHISEE agrees that during the term of the Franchise, and for 2 years after the later of: 1) expiration or termination of the Franchise, regardless of the cause of expiration or termination; or 2) the date of final judgment or order of any court or tribunal that enforces [the Noncompetition Provision], FRANCHISEE will not, without the prior written consent of FRANCHISOR, directly or indirectly, for itself, or through, on behalf of or in conjunction with any person or entity, employ, engage as an independent contractor, or seek to employ or engage as an independent contractor, any person or entity who, within the prior 6 months, has been an employee or independent contractor of FRANCHISOR . . . or induce or seek to induce any person or entity who is an employee or independent contractor of FRANCHISOR . . . to leave his or her employment or engagement.

Franchise Agreements ¶ 21.3.

16.  Individual Defendants also acknowledged in the Noncompetition Provision that:

> certain methods of doing business and other elements comprising the System are unique and distinctive, and have been developed by FRANCHISOR at great effort, skill, time and expense; that FRANCHISEE will have regular and continuing access to valuable trade secrets, confidential information and valuable training regarding the Franchise and System; and that FRANCHISEE recognizes its continuing obligation to promote the Franchise. FRANCHISEE accordingly agrees as follows:
> (a) During the term of the Franchise, FRANCHISEE will not, without FRANCHISOR'S prior written consent, directly or indirectly, for itself, or through, on behalf of or in conjunction with any other person or entity, own, operate, maintain, engage in, have any interest in, be employed by or perform any service for any business or person which offers services or products that are the same as or substantially similar to services or products that are or could be offered by FRANCHISEE under this Agreement, and which operates in the United States or in any foreign country where FRANCHISOR, any of FRANCHISOR'S franchisees, or any other related entity is operating.
> (b) FRANCHISEE agrees that, for an uninterrupted period of 2 years after the later of: 1) expiration or termination of the Franchise regardless of the cause of expiration or termination; or 2) the date of final judgment or order of any court or tribunal that enforces [the Noncompetition Provision], FRANCHISEE will not, without FRANCHISOR'S prior written consent, directly or indirectly, for itself, or through, on behalf of or in conjunction with any other person or entity, own, operate, maintain, engage in, have any interest in, be employed by or perform any service for any business or person which offers services or products that are the same as or substantially similar to services or products that were or could have been offered by FRANCHISEE under this Agreement, and which

> operates in the United States or in any foreign country where FRANCHISOR, any of FRANCHIS'S [sic] franchisees, or any other related entity is operating.

Franchise Agreements ¶ 21.4.

17. Attached to the Franchise Agreements for both Individual Defendants were signed Employee/Independent Contractor Confidentiality & Nondisclosure Agreements and/or Manager/Supervisor Confidentiality & Noncompetition Agreements, which also contained noncompetition and nonsolicitation covenants binding the Individual Defendants.

18. The Franchise Agreements stated that the Individual Defendants must indemnify USS "for any expenses arising out of any claim directly or indirectly related to FRANCHISEE'S operation of the Franchise or performance or lack of performance under this Agreement. . . ." Franchise Agreements ¶ 24.2.

19. "Expenses" to which Individual Defendants may have to indemnify USS are defined in the Franchise Agreements as including

> all losses, compensatory, exemplary or punitive damages, fines, charges, costs, lost profits, attorney's fees, accountants' fees, expert witness fees, expenses, court costs, settlement amounts, judgments, compensation for damages to reputation or goodwill, costs of or resulting from delays, financing, costs of advertising material and medial time/space, and costs of changing, substituting or replacing the same, and costs of recall, refunds, compensation and public notices.

Franchise Agreements ¶ 24.4.

20. Additionally, the Franchise Agreements note that "[t]he indemnification obligations of FRANCHISOR and FRANCHISEE will survive the expiration or termination of the Franchise for as long as any potential for liability under any applicable law, rule, ordinance, statute or judicial decision remains." Franchise Agreements ¶ 24.5.

21. The Franchise Agreements specifically reserve USS's right to seek injunctive relief. Franchise Agreements ¶ 32.4.

**The Individual Defendants Have Breached the Franchise Agreements.**

22. Despite the above-referenced terms of the Franchise Agreements, the Individual Defendants have conspired and breached their obligations to USS.

23. On or around August 2005, the Whitesides Franchisees assigned their rights and obligations to Kaizen Shipping, LLC ("Kaizen"). Whitesides owns an interest in Kaizen.

24. On or about June 30, 2006, Larson transferred the Larson Franchisees to a third party.

25. By at least March 2006, the Individual Defendants together formed OC Logistics.

26. Through OC Logistics, the Individual Defendants are selling shipping services that directly compete with the shipping services offered by USS, including in Utah.

27. In addition to competing generally with USS, the Individual Defendants through OC Logistics have solicited and continue to solicit USS's existing customers, including customers located in Utah.

28. The Individual Defendants conspired to form a competing business and to solicit USS customers while they were still USS franchisees.

29. In addition, Individual Defendants have recruited at least one current USS franchise owner to join OC Logistics.

## FIRST CAUSE OF ACTION
(Declaratory Judgment)
(Against Individual Defendants)

30. USS incorporates herein paragraphs 1 through 29 of the Complaint.

31. Individual Defendants signed the Franchise Agreements, which contain the Noncompetition Provision.

32. An actual controversy has arisen and now exists between USS and Individual Defendants concerning the scope and interpretation of the Noncompetition Provision.

33. USS contends that the Noncompetition Provision is valid and binding upon Individual Defendants.

34. USS also contends that the Noncompetition Provision prohibits the Individual Defendants from offering services which compete with services provided by USS or from soliciting USS's customers while Individual Defendants are franchisees and for 2 years after their termination as franchises.

35. USS also contends that the Noncompetition Provision prohibits the Individual Defendants from soliciting current employees of USS or employees who left USS within the previous 6 months.

36. Individual Defendants, on the other hand, claim the Noncompetition Provision is unenforceable.

37. A judicial determination is necessary and appropriate at this time and under these circumstances so that USS and Individual Defendants can resolve this dispute.

38. USS requests that this Court, pursuant to its authority under 28 U.S.C. §§ 2201 and 2202, "declare the rights and other legal relations" of USS and Individual Defendants in relation to the Noncompetition Provision of the Franchise Agreements and declare that the

Noncompetition Provision is valid and binding upon Individual Defendants and prohibits them from competing with USS or soliciting USS employees in areas where USS conducts business while Individual Defendants are USS franchisees and for two years thereafter.

## SECOND CAUSE OF ACTION
(Breach of Contract)
(Against Individual Defendants)

39. USS incorporates herein paragraphs 1 through 38 of the Complaint.

40. USS and Individual Defendants entered into the Franchise Agreements and other attached agreements, in which Individual Defendants agreed they would not, during their time as franchises or for a period of two (2) years after their termination,

> directly or indirectly, for itself, or through, on behalf of or in conjunction with any other person or entity, own, operate, maintain, engage in, have any interest in, be employed by or perform any service for any business or person which offers services or products that are the same as or substantially similar to services or products that were or could have been offered by FRANCHISEE under this Agreement, and which operates in the United States or in any foreign country where FRANCHISOR, any of FRANCHIS'S [sic] franchisees, or any other related entity is operating.

Franchise Agreements ¶ 21.4.

41. Individual Defendants also agreed that they would not solicit employees or independent contractors of USS.

42. Individual Defendants, however, have breached the noncompete and nonsolicitation promises contained in the Franchise Agreements.

43. USS is entitled to preliminary and permanent injunctive relieve preventing the Individual Defendants from further breaching the noncompetition and nonsolicitation provisions of the Franchise Agreements.

44. USS is also entitled to an award of damages suffered by USS as a result of Defendants' breaches of the Franchise Agreements in an amount in excess of $75,000 to be proven at trial.

45. USS is also entitled to an award of USS's costs and reasonable attorney's fees pursuant to the Franchise Agreements ¶ 24.2.

### THIRD CAUSE OF ACTION
(Civil Conspiracy to Engage in Breach of Contract)
(Against Individual Defendants)

46. USS incorporates herein paragraphs 1 through 45 of the Complaint.

47. Individual Defendants comprise a combination of two or more persons

48. Individual Defendants, and possibly others, had a meeting of the minds on a course of action to engage in violations and wrongful acts alleged herein, the purpose of which was to undermine USS's business and usurp that business for their own benefit.

49. Individual Defendants have undertaken numerous unlawful acts as set forth above.

50. Pursuant to the conspiracy and in furtherance thereof, Individual Defendants breached their Franchise Agreements with USS.

51. Individual Defendants are liable to USS for all of USS's direct, consequential, and punitive damages caused by the unlawful acts in furtherance of the conspiracy in amounts to be proven at trial.

### FOURTH CAUSE OF ACTION
(Tortious Interference with Contractual and Prospective Economic Relations)
(Against All Defendants)

52. USS incorporates herein paragraphs 1-51 of the Complaint.

53. USS has existing contractual relationships and/or prospective economic relationships with its present and prospective customers.

54. Defendants have intentionally solicited and continue to solicit USS's customers and franchise owners, and otherwise interfere with USS's existing and prospective contractual and economic relationships.

55. Defendants have interfered with USS's contractual relationships and/or prospective economic relationships through improper means and with improper motives.

56. As a direct and proximate result of the Defendants' acts, USS has suffered and continues to suffer damages in excess of $75,000 to be proven at trial.

57. Defendants' actions in interfering with USS's existing contractual and/or prospective economic relationships were willful, intentional, malicious and manifested a knowing and reckless indifference toward, and disregard of the rights of USS.

58. Because the Defendants will continue, unless restrained, to tortiously interfere with USS's existing contractual and/or economic relationships and cause irreparable harm to USS, USS has no adequate remedy at law and is entitled to injunctive relief against the Defendants.

## FIFTH CAUSE OF ACTION
(Alter Ego)
(Against OC Logistics)

59. USS incorporates herein paragraphs 1-58 of the Complaint.

60. Individual Defendants formed and currently control and manage OC Logistics.

61. Individual Defendants used the entity of OC Logistics to breach the Franchise Agreements and to tortiously interfere with contractual and prospective economic relations of USS, as set out in the above causes of action.

62. Individual Defendants have used OC Logistics as a façade for their individual operations and for their personal benefit, and as a means of circumventing the noncompete and nonsolicitation covenants contained in the Franchise Agreements.

63. Therefore, USS is entitled to an order of this Court that OC Logistics is the alter ego of Individual Defendants.

64. Moreover, as the alter ego of Individual Defendants, OC Logistics is liable to USS for any judgment obtained by USS against Individual Defendants and visa versa.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment as follows:

1. On the First Cause of Action:

    a. Declaring that the Noncompetition Provision is valid and binding upon Individual Defendants and prohibits them from competing with USS or soliciting USS employees in areas where USS conducts business while Individual Defendants are USS franchisees and for two years thereafter.

2. On the Second Cause of Action:

    a. Ordering that Defendants be preliminarily and permanently enjoined from engaging in any business which competes, directly or indirectly, with USS;

    b. Ordering preliminary and permanent injunctive relief against Defendants to compel Defendants into full compliance with their contractual obligations in the Franchise Agreement;

    c. Ordering that Defendants are liable to USS for all of USS's direct, consequential, and punitive damages caused by Defendants' breach of contract in amounts to be proven at trial; and

    d. Granting an award of USS's costs and reasonable attorney's fees.

  3. <u>On the Third Cause of Action</u>:

    a. Ordering that Defendants are liable to USS for all of USS's direct, consequential, and punitive damages caused by the unlawful acts in furtherance of the conspiracy in amounts to be proven at trial.

  4. <u>On the Fourth Cause of Action</u>:

    a. Ordering that the Defendants be preliminarily and permanently enjoined from engaging in any act or series of acts which, either alone or in combination, constitute a tortious interference with USS's existing and prospective contractual and economic relations;

    b. Granting an award of damages suffered by USS as a result of the Defendants' tortious interference with USS's existing and/or prospective contractual and economic relations in an amount according to proof at the time of trial herein;

    c. Granting an accounting of the Defendants' profits as a result of their tortious interference with USS's economic relations and granting an award of restitution of all gains, profits, and advantages the Defendants' have obtained as a result of their wrongful acts in an amount according to proof at the time of trial herein;

    d. Granting an award of punitive damages in an amount to be established at trial; and

    e. Granting an award of USS's costs and reasonable attorney's fees.

  5. <u>On the Fifth Cause of Action:</u>

    a. Issuing a determination that OC Logistics is the alter ego of Individual Defendants; and

    b. Ordering that, as the alter ego of Individual Defendants, OC Logistics is liable to USS for any judgment obtained by USS against Individual Defendants and visa versa.

   6. For such other and further relief as the Court deems just and proper.

DATED: September 27, 2006.

                STOEL RIVES LLP

                */s/ Mark E. Hindley*
                Mark E. Hindley

                Attorney for Plaintiff

Plaintiff's address: 6985 Union Park Center,
         Suite 565,
         Midvale Utah 84047