## 35.   ACKNOWLEDGEMENTS BY FRANCHISEE

35.1    FRANCHISEE acknowledges that:

(a)   **It has conducted an independent investigation of the Franchise contemplated by this Agreement, including an independent investigation of actual and potential competition in the Development Territory. FRANCHISEE recognizes that the Franchise involves significant risks, making the success of the business largely dependent on the abilities and attention of FRANCHISEE and the carrier(s) and/or resellers with whom FRANCHISOR has contracted, but over whom FRANCHISOR has no control. FRANCHISOR expressly disclaims the making of, and FRANCHISEE acknowledges that it has not received or relied on, any representation, warranty or guarantee, express or implied, as to all actual or potential competition in the Development Territory, or as to the potential sales, profits or success of the Franchise.**

(b)   **In entering into this Agreement, it has not relied on any representation by FRANCHISOR, or any officer, director, shareholder, member, employee, attorney, or agent of FRANCHISOR concerning the Franchise which is contrary to the terms of this Agreement, the documents incorporated into this Agreement or attached to it, or the UFOC disclosure document provided to FRANCHISEE by FRANCHISOR.**

(c)   It has read, carefully considered, and understood this Agreement, the UFOC disclosure document, and all related agreements; FRANCHISOR has fully and adequately explained the terms of each to FRANCHISEE'S satisfaction; and FRANCHISOR has accorded it ample time and opportunity to consult, and it has consulted, with existing franchisees, and with financial, legal and other advisors of its own choosing, about the potential and risks of entering into the Franchise.

(d)   Complete and detailed uniformity among FRANCHISOR'S franchisees under varying conditions may be inadvisable, impractical or impossible, and accordingly agrees that FRANCHISOR, in its discretion, may modify or vary aspects of the System as to any franchisee or group of franchisees based on, for example, local sales potential demographics, competition, business practices or other conditions. FRANCHISEE further agrees that FRANCHISOR will have no obligation to disclose or offer the same or similar variances to FRANCHISEE. It is aware that other FRANCHISOR'S franchisees may operate under different agreements and, consequently, that FRANCHISOR'S obligations and rights as to those franchisees may differ materially in certain circumstances.

(e)   It has received a UFOC disclosure document, FRANCHISOR'S standard Franchise Agreement and all related agreements at least 10 business days before the execution of this Agreement, and has received a substantially complete version of this Agreement and all related agreements at least 5 business days before the execution of this Agreement.

(f)   It has made no payments to FRANCHISOR before the execution of this Agreement.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Attachment 1 – DEVELOPMENT TERRITORY

Subject to any exclusions specified below, FRANCHISEE'S Development Territory is defined as follows:
- **SEE ATTACHMENT 1A FOR MAP AND DATA.**

The following exclusions apply to FRANCHISEE'S Development Territory:
- **NONE**

If the U.S. Postal Service alters the boundary or numbers of any assigned ZIP code(s), FRANCHISOR will reassign to FRANCHISEE the re-designated ZIP code(s) that most nearly correspond to any previously held ZIP Code(s).

Unless otherwise agreed to between FRANCHISOR and FRANCHISEE, minimum shipment requirements as outlined below will commence on ___November  One_____, 2004.

## EXPEDITED SMALL PACKAGE SERVICE MINIMUM REQUIREMENTS:

In the initial term of the franchise, you must meet the following Expedited Small Package (**Air Express & Ground Delivery) Service** minimum average gross shipment (*calculation excludes Freight Service and Same Day Service)* quotas per month, per territory, during the 3-month period prior to the term indicated in the following table. You must meet each requirement, in the following table, to maintain your Expedited Small Package (**Air Express and Ground Delivery) Service** selling rights for the Development Territory:

| Date | Minimum Ave Gross Shipment Quota |
| --- | --- |
| End of 3rd month | 100 shipments/month |
| End of 6th month | 400 shipments/month |
| End of 12th month | 1,000 shipments/month |
| End of 18th month | 1,600 shipments/month |
| End of 24th month | 2,200 shipments/month |
| End of 30th month | 2,500 shipments/month |
| End of 36th month | 2,800 shipments/month |
| End of 42nd month | 3,100 shipments/month |
| End of 48th month | 3,400 shipments/month |
| End of 54th month | 3,700 shipments/month |
| End of 60th month | 4,000 shipments/month |
| End of 66th month | 4,300 shipments/month |
| End of 72nd month | 4,600 shipments/month |

Customer accounts with shipping activity pre-dating the effective date of your Franchise Agreement are excluded in determining average gross shipment quotas per month.

Unless otherwise agreed to between FRANCHISOR and FRANCHISEE, the 1st 6 month period begins on the 1st day of the calendar month after the date you complete training. We may require you to meet higher minimum average gross shipment quotas per month, per territory, in the initial term or any renewal term, if necessary to uphold contractual changes with our carrier partner(s). If you fail to achieve any minimum average gross shipment quota, at any time during the 6 month period, your FRANCHISE will be subject to entering the Franchise Development Program (FDP), which may lead up to termination of your franchise.

For purposes of the minimum average gross shipment quotas, shipments are not cumulative from 6 month period to 6 month period.

Unless you and we agree otherwise in writing, we will set the minimum average gross shipment quota from the 73rd month to the remainder of the renewal term equal to the average gross shipment quota of the 72nd month for the remainder of any renewal term.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

(g)    It understands the substantial risks involved in operating the Franchise. It will, to a large degree, be dependent on the air express carrier(s') systems, personnel, administrative requirements, practices and service levels, all of which can fluctuate dramatically and frequently. It is further understood that it is likely that the additional volume of business generated by FRANCHISOR in certain areas may tax the carrier(s') systems to such an extent that capacity and the carrier(s') ability to service accounts may be adversely affected. Additionally, FRANCHISEE understands and agrees that FRANCHISOR is not liable or responsible in any way for the carrier(s') ability or inability to service any FRANCHISEE account(s) or other aspects of the carrier(s') physical or administrative operations. It also understands that FRANCHISOR may not have alternative air express carrier(s) of equivalent quality with whom FRANCHISOR can contract and may not be able to replace the air express carrier(s) contract if said contract is terminated or if said carrier(s) is/are subjected to a strike. This could render the Franchise inoperable or severely impaired.

IN WITNESS WHEREOF, the parties have set their hands and seals.

WITNESS:                          FRANCHISEE:

_____          Date Received: 5-12-04

                                 Date Signed: 15-15-04


                                 FRANCHISOR:

UNITED SHIPPING SOLUTIONS, LLC

                                 By: _____

                                 Title: Franchise Dev.

                                 Date Signed: 12/27/04

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

If FRANCHISE fails to maintain minimums during the remainder of the renewal term after the 73rd month for any two (2) consecutive quarters, Franchise will be subject to the Franchise Development Program (FDP).

## FREIGHT SERVICE MINIMUM REQUIREMENTS:

In the initial term of the franchise, you must meet the following minimum average gross **Freight Service** shipment (*calculation excludes Air Express Service and Ground Delivery Service "GDS"*) quotas per month, per territory, during the 3-month period prior to the term indicated in the following table. You must meet each requirement, in the following table, to maintain your **Freight Service** selling rights for the Development Territory:

| Date | Minimum Ave Gross Freight Shipment Quota |
|------|------------------------------------------|
| End of 3rd month | 1 shipment |
| End of 6th month | 1 shipment/month |
| End of 12th month | 1 shipment/month |
| End of 18th month | 2 shipments/month |
| End of 24th month | 2 shipments/month |
| End of 30th month | 3 shipments/month |
| End of 36th month | 3 shipments/month |
| End of 42nd month | 4 shipments/month |
| End of 48th month | 4 shipments/month |
| End of 54th month | 4 shipments/month |
| End of 60th month | 5 shipments/month |
| End of 66th month | 5 shipments/month |
| End of 72nd month | 5 shipments/month |

Customer accounts with shipping activity pre-dating the effective date of your Franchise Agreement are excluded in determining average gross shipment quotas per month.

Unless otherwise agreed to between FRANCHISOR and FRANCHISEE, the 1st 6 month period begins on the 1st day of the calendar month after the date you complete training. We may require you to meet higher minimum average gross shipment quotas per month, per territory, in the initial term or any renewal term, if necessary to uphold contractual changes with our carrier partner(s). If you fail to achieve any minimum average gross shipment quota, at any time during the 6 month period, your FRANCHISE will be subject to entering the Franchise Development Program (FDP), which may lead up to termination of your franchise.

For purposes of the minimum average gross shipment quotas, shipments are not cumulative from 6 month period to 6 month period.

Unless you and we agree otherwise in writing, we will set the minimum average gross shipment quota from the 73rd month to the remainder of the renewal term equal to the average gross shipment quota of the 72nd month for the remainder of any renewal term.

If FRANCHISE fails to maintain minimums during the remainder of the renewal term after the 73rd month for any two (2) consecutive quarters, Franchise will be subject to the Franchise Development Program (FDP).

In exchange for your Development Territory marketing rights, you agree to refrain from soliciting or providing services to individual customers outside your Development Territory unless you choose to enter into a Franchise Referral Agreement with other participating Franchises. You may solicit branch offices located outside of your Development Territory of customers as long as your Development Territory contains the headquarters or home office in its Development Territory and the headquarters or home office utilizes central billing as outlined in the National Account Policy,

USS Non-Registration Franchise Agreement 03.00          41          Jim Beidleman **HONOLULU SOUTH** (252) 5/6/04

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

Attachment 1A – **DEVELOPMENT TERRITORY (MAP & DATA)**

(See Attached Data & Maps)

USS Non-Registration Franchise Agreement 03.00    42    Jim Beidleman **HONOLULU SOUTH** (252) 5/6/04

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## ATTACHMENT 1A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96757 Kualapuu, HI | 14 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96761 Lahaina, HI | 798 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96763 Lanai City, HI | 58 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96767 Lahaina, HI | 77 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96768 Makawao, HI | 296 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96770 Maunaloa, HI | 22 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96779 Paia, HI | 127 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96784 Puunene, HI | 52 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96788 Pukalani, HI | 27 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96790 Kula, HI | 165 |
| 15 Hawaii | HONOLULU S, MAUI, HAWAII | 15009 Maui, HI | 96793 Wailuku, HI | 841 |

**HONOLULU S, MAUI, HAWAII  Total**  15,378
**Grand Total**  15,378
**Cost of Franchise is based on $2.00 per business**

~~$30,757~~

$ 13 750

**ATTACHMENT 1A**

| State | State1 | Territory | County | County1 | ZIP Code | ZIP Code1 | No Bus |
|---|---|---|---|---|---|---|---|
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96704 | Captain Cook, HI | 82 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96710 | Hakalau, HI | 8 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96718 | Hawaii National Park, HI | 9 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96719 | Hawi, HI | 19 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96720 | Hilo, HI | 1,397 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96721 | Hilo, HI | 135 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96725 | Holualoa, HI | 62 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96726 | Honaunau, HI | 38 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96727 | Honokaa, HI | 88 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96728 | Honomu, HI | 9 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96737 | Ocean View, HI | 12 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96738 | Waikoloa, HI | 83 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96739 | Keauhou, HI | 36 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96740 | Kailua Kona, HI | 831 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96743 | Kamuela, HI | 413 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96745 | Kailua Kona, HI | 293 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96749 | Keaau, HI | 155 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96750 | Kealakekua, HI | 150 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96755 | Kapaau, HI | 58 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96760 | Kurtistown, HI | 32 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96764 | Laupahoehoe, HI | 12 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96771 | Mountain View, HI | 27 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96772 | Naalehu, HI | 41 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96773 | Ninole, HI | 2 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96774 | Ookala, HI | 2 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96775 | Paauhau, HI | 1 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96776 | Paauilo, HI | 21 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96777 | Pahala, HI | 22 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96778 | Pahoa, HI | 110 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96780 | Papaaloa, HI | 3 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96781 | Papaikou, HI | 19 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96783 | Pepeekeo, HI | 9 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15001 | Hawaii, HI | 96785 | Volcano, HI | 31 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96795 | Waimanalo, HI | 124 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96814 | Honolulu, HI | 1,942 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96815 | Honolulu, HI | 1,352 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96816 | Honolulu, HI | 1,030 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96821 | Honolulu, HI | 212 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96822 | Honolulu, HI | 434 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96824 | Honolulu, HI | 43 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96825 | Honolulu, HI | 480 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96826 | Honolulu, HI | 834 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96828 | Honolulu, HI | 46 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96830 | Honolulu, HI | 124 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96836 | Honolulu, HI | 11 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96839 | Honolulu, HI | 52 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15003 | Honolulu, HI | 96844 | Honolulu, HI | 2 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96708 | Haiku, HI | 161 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96713 | Hana, HI | 44 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96729 | Hoolehua, HI | 20 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96732 | Kahului, HI | 753 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96733 | Kahului, HI | 131 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96742 | Kalaupapa, HI | 3 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96748 | Kaunakakai, HI | 128 |
| 15 | Hawaii | HONOLULU S, MAUI, HAWAII | 15009 | Maui, HI | 96753 | Kihei, HI | 766 |

ATTACHMENT 1A



© 2001 Lhostsat Corp. All rights reserved.

**Attachment 2 – CORPORATION/LIMITED LIABILITY COMPANY/PARTNERSHIP INFORMATION SHEET**

Corporation/Limited Liability Company/Partnership Name: _Jim Beidleman_

State/Date of Formation: _11-9-04_

Shareholder/Members/Partners:

| _51_ | | _Jim Beidleman_ |
|------|--|----------|
| % Interest | Class/G or L Partner | Name |

| _49_ | | _Matt Larson_ |
|------|--|----------|
| % Interest | Class/G or L Partner | Name |

| | | |
|------|--|----------|
| % Interest | Class/G or L Partner | Name |

| | | |
|------|--|----------|
| % Interest | Class/G or L Partner | Name |

| | | |
|------|--|----------|
| % Interest | Class/G or L Partner | Name |

**Documents:**

| Item(s) | Not Required | Provided to FRANCHISOR | To Be Provided to FRANCHISOR Within 30 Days |
|---------|--------------|------------------------|---------------------------------------------|
| Certificate and Articles of Incorporation | | | |
| Articles of Organization (LLC) | | | |
| Certificate and Agreement Partnership | | | |
| By-Laws | | | |
| Resolution Authorizing Franchise Agreement | | | |
| Operating or Partnership Agreement | | | |
| Other: | | | |

**Conditions:**

| | YES | NO |
|---|-----|-----|
| The corporation, limited liability company, or partnership's activities must be confined exclusively to operating the Franchise. | | |
| [Persons Name] (or another person with FRANCHISOR'S written consent) must act as the corporation, limited liability company, or partnership's principal operating officer, managing member, or partner. | | |
| Each shareholder, member, or partner, excluding only [Name] (who has or have a 5% or less interest, must sign the Guaranty Agreement (Attachment 3) | | YES |
| The corporation or partnership must maintain stop transfer instructions against transfer on its records of any stock certificate or certificate interest contrary to the terms of Section 25 of the Franchise Agreement. | | YES |
| Each stock certificate of the corporation or certificate of interest of the partnership must include the statement specified in Section 25.4 of the Franchise Agreement. | | YES |
| The corporation or partnership must maintain a current list of all shareholders or partners, and must furnish the list to FRANCHISOR on request. | | YES |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Attachment 3 – GUARANTY AGREEMENT

In consideration of, and as an inducement to, the execution by United Shipping Solutions, LLC, a Utah limited liability company, whose address is 6985 Union Park Center Suite 565  Midvale, Utah 84047 ("FRANCHISOR") of the Franchise Agreement between FRANCHISOR and _____ ("FRANCHISEE") executed _____ (the "Agreement") each undersigned personally and unconditionally for the term of the Franchise and thereafter as provided in the Agreement, (1) guarantees to FRANCHISOR and its successors and assigns, that FRANCHISEE will punctually pay or perform each obligation in the Agreement, and (2) agrees to be personally bound by, and personally liable for the default of, each term of the Agreement.

Each of the undersigned waives:

(1) Acceptance and notice of acceptance by FRANCHISOR of these undertakings.

(2) Notice of demand for payment of any indebtedness or nonperformance of any obligation guaranteed.

(3) Protest and notice of default to any party as to any indebtedness or nonperformance of any obligation guaranteed.

(4) Any right he or she may have to require that an action be brought against FRANCHISEE or any other person as a condition of liability.

Each of the undersigned agrees that:

(1) His or her direct and immediate liability under this guaranty is joint and several.

(2) He or she will render any payment or performance required under the Agreement on demand if FRANCHISEE fails or refuses to do so punctually.

(3) His or her liability will not be contingent or conditioned on pursuit by FRANCHISOR or any remedies against FRANCHISEE or any other person.

(4) His or her liability will not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which FRANCHISOR may grant to FRANCHISEE or any other person, including the acceptance of any partial payment or performance, or the compromise or release of any claim, non of which will in any way modify or amend this guaranty, which will be continuing and irrevocable for as long as any obligation in the Agreement remains in effect.

Each of the undersigned affixes his or her signature to this guaranty as of the same date as the date of execution of the Agreement.

GUARANTOR

Name: _Jim Beidleman_

Address: _21062 Red Jacket_

_Huntington Beach CA 92646_

Date: _10-15-04_

GUARANTOR

Name: _Matthew Larson_

Address: _5004 Seashore Dr unit M_

_Newport Beach, CA 92663_

Date: _10-15-04_

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Attachment 4 – TELEPHONE LISTING AGREEMENT

THIS AGREEMENT is entered into by United Shipping Solutions, LLC, a Utah limited liability company, whose address is  6985 Union Park Center Suite 565 Midvale Utah 84047 ("FRANCHISOR"), and _____ whose address is _____ ("FRANCHISEE").

RECITALS:

A.   FRANCHISOR is the franchisor of UNITED SHIPPING SOLUTIONS businesses and the owner of service marks, trademarks, trade names and trade dresses related to the operation of those businesses (the "Marks").

B.   FRANCHISOR and FRANCHISEE have executed a Franchise Agreement dated _____, 20_____ (the "Franchise Agreement"), under which FRANCHISEE is granted a franchise (the "Franchise") involving certain rights to use the Marks in FRANCHISEE'S business telephone directory listings to promote its UNITED SHIPPING SOLUTIONS businesses; and

C.   FRANCHISEE is authorized to continue using the Marks until the Franchise is repurchased, terminated or expires.

In consideration of the recitals above and the terms below, FRANCHISOR and FRANCHISEE agree:

1.   FRANCHISEE is authorized to obtain telephone service for the Franchise. That service is not to be used in conjunction with any other business or residential telephone service.

2.   FRANCHISEE is authorized to obtain white page, yellow page and information listings, and yellow page advertisements, under FRANCHISOR or any other Marks FRANCHISEE may be authorized to use. No proper names or city names may be used in conjunction with the Marks and no additional listings may be used with any telephone number(s) assigned to the Franchise, without FRANCHISOR'S prior written consent.

3.   All yellow page advertisements must be approved in advance in writing by FRANCHISOR.

4.   FRANCHISEE must pay all charges for telephone service, white page, yellow page and information listings, and yellow page advertisements.

5.   On repurchase, termination or expiration of the Franchise, FRANCHISEE acknowledges that its right to the use of any service marks, trademarks, trade names and trade dresses made available by

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

FRANCHISOR to FRANCHISEE for use under the Franchise Agreement, will immediately end, and that all telephone numbers appearing under the Marks will immediately become the property of FRANCHISOR, and irrevocably releases to FRANCHISOR all rights to and use of all telephone numbers associated with the Marks then listed. FRANCHISEE irrevocably authorizes the telephone company, on notification by FRANCHISOR of repurchase, termination or expiration of the Franchise, to assign all of those telephone numbers to FRANCHISOR or to disconnect those telephone numbers and to transfer calls coming to those disconnected numbers to any telephone numbers issued by the telephone company to FRANCHISOR, without the need for any further document(s) from FRANCHISEE.

6. FRANCHISEE irrevocably releases the telephone company, FRANCHISOR, and their respective successors, assigns, directors, officers, employees and agents, from liability of any kind which may result directly or indirectly from FRANCHISOR'S exercise of its rights under this Agreement or from the telephone company's cooperation with FRANCHISOR in effecting the terms of this Agreement.

The undersigned agree to the terms of this Agreement:

FRANCHISEE:

Name: _Jim Beidleman_

Date Received: _5-12-04_

Date Signed: _10-15-04_

FRANCHISOR:

Name: _____

Title: _Franchise Dev._

Date Signed: _12/27/04_

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

**Attachment 5 – EMPLOYEE/INDEPENDENT CONTRACTOR CONFIDENTIALITY & NONDISCLOSURE AGREEMENT**

THIS CONFIDENTIALITY & NONDISCLOSURE AGREEMENT ("Agreement") is entered into by_____ ("Franchise/Employer") on behalf of United Shipping Solutions, LLC, a Utah Limited Liability Company,("Franchisor"), and _____ ("Employee/Contractor") is made and entered into as of the _____ day of _____, 2003 ("The Effective Date").

1.  <u>Covenants Not to Disclose</u>.  Employee/Contractor acknowledges that certain methods of doing business and other elements comprising the UNITED SHIPPING SOLUTIONS system are distinctive and have been developed by UNITED SHIPPING SOLUTIONS and Company at great effort, skill, time and expense; that Employee/Contractor will have regular and continuing access to valuable trade secrets, confidential information and valuable training regarding the UNITED SHIPPING SOLUTINS system; and that Employee/Contractor recognizes his or her obligation to promote and develop the Franchised Business.  Employee/Contractor accordingly agrees as follows:

    a.  Except as required in duties performed for Company, Employee/Contractor will never, either during or after the term or engagement or employment, directly or indirectly use, disseminate or disclose to any person or entity, any trade secret or confidential information, including any client name, other client information or business methods of UNITED SHIPPING SOLUTIONS or Company, and will always seek to preserve the confidentiality of those trade secrets and confidential information without the prior written consent of UNITED SHIPPING SOLUTIONS and Company.

    b.  Employee/Contractor will not, directly or indirectly, for himself or herself, or through, on behalf of, or in conjunction with any person or entity, divert or attempt to divert any business, accounts, customers, clients, vendors, or carriers of UNITED SHIPPING SOLUTIONS Company or any UNITED SHIPPING SOLUTIONS franchisee to any competitor or other person by inducement or otherwise, without the prior written consent of UNITED SHIPPING SOLUTIONS and Company.

2.  <u>Covenants Concerning Company Property</u>.  Employee/Contractor agrees that all records of UNITED SHIPPING SOLUTIONS and Company, including records of customers and all other records relating in any manner to the Franchised Business, whether prepared by Employee/Contractor or otherwise coming into his or her possession, are the exclusive property of UNITED SHIPPING SOLUTIONS or Company.  Additionally, Employee/Contractor agrees that all files, records, documents, drawings, specifications and similar items relating to the Franchised Business, including all copies of those items, whether prepared by Employee/Contractor or otherwise coming into his or her possession, will not be removed by Employee/Contractor from Company's premises and will immediately be returned to Company by Employee/Contractor upon termination of his or her engagement or employment, regardless of the cause of termination.

3.  <u>Modification</u>. This Agreement may be modified only with UNITED SHIPPING SOLUTIONS prior written consent, and only in a written agreement of at least equal formality signed by the parties.

    IN WITNESS WHEREOF, the parties have executed this Agreement on the dates written below.

COMPANY: _____          EMPLOYEE/CONTRACTOR:

By: _____          _____
                                                            (Sign Here)

Its: _____          _____
                                                            (Date)

USS Non-Registration Franchise Agreement 03.00          47          Jim Beidleman **HONOLULU SOUTH** (252) 5/6/04

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Attachment 6 – UCC-1 FINANCING STATEMENT

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |
| 1d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names  ☐ NONE

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |
| 2d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)  ☐ NONE

| 3a. ORGANIZATION'S NAME  United Shipping Solutions, L.L.C., a Utah limited liability company dba Freight Savers Express | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS  740 East 9023 South Suite A | CITY  Sandy | STATE POSTAL CODE  UT  84094 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:

All unpaid shipment sales incurred prior to the termination or non-renewal of the Franchise, presently existing or hereafter acquired regardless of where located.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum | | | ☐ 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Attachment 7 – LETTER OF CREDIT

## [LETTERHEAD OF FINANCIAL INSTITUTION ISSUING LETTER OF CREDIT]

### Irrevocable Standby Letter of Credit
### Auto-Renewable

Opening Date for Letter of Credit: [~ date ~]

Beneficiary:     United Shipping Solutions, LLC,
Attention: Charles Derr, CEO
6985 Union Park Center
Suite 565
Midvale, UT. 84047

Applicant:     [Name and Address of Franchisee]

Amount: $10,000

Expires: December 31, [5 years from date of Franchise Agreement] at our counters in [City and State] for presentation of documents.

We hereby open our Irrevocable Standby Letter of Credit [~ number/letter ~] in your favor at the request of and for the account of the Beneficiary, United Shipping Solutions, LLC, a Utah limited liability company, 6985 Union Park Center Suite 565 Midvale, UT. 84047, in an amount of TEN THOUSAND and NO/100 DOLLARS ($10,000.00) available for payment at sight by your demand/request for payment from [~ name and address of issuing bank ~] accompanied by the following documents:

    A. An Original copy of this credit.

    B. A Copy of the commercial invoice(s).

    C. A statement purportedly signed by one of your authorized officers stating that the invoice(s) referenced above was (were) presented to [name of Franchisee] and was (were) not paid in accordance with the terms of payment or contract and remains (remain) unpaid at the time of drawing.

    1. We hereby undertake to promptly honor your sight draft(s) drawn on us upon presentation. Draft(s) drawn under this letter of credit may not be presented prior to [~ date ~], and must be presented on or before December 31, [5 years from date of Franchise Agreement]. Drafts drawn under this Credit must be marked on the face "Drawn Under [~ name of issuing bank ~] Irrevocable Standby Letter of Credit [~ number/letter ~]."

    2. Except as expressly stated herein, this undertaking is not subject to any agreement, requirement or qualification. The obligation of [~ name of issuing bank ~] under this Letter of Credit is the individual obligation of [~ name of issuing bank ~] and is in no way contingent upon reimbursement with respect thereto or upon our ability to perfect any lien, security interest or any other reimbursement.

    3. All banking charges, including any advising bank charges are for the account of [name of Franchisee].

    4. Partial shipments and drawings are permitted.

    5. The amount of commercial invoice(s) referenced above may exceed the amount of this Letter of Credit; however, in no event may drawings under this Letter of Credit exceed the value of this Letter of Credit or 100 percent of the invoice amount.

USS Non-Registration Franchise Agreement 03.00     **49**     Jim Beidleman **HONOLULU SOUTH** (252) 5/6/04

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

6.    The Beneficiary includes any successor by operation of law or the named Beneficiary.  If a court of law appoints a successor in interest to the named Beneficiary, then the named Beneficiary includes and is limited to the court appointed domiciliary receiver (including conservator, rehabilitator or liquidator).

7.    The amount available for drawings under this letter of credit will be reduced by the amount of any payment(s) that the beneficiary receives outside this letter of credit if such payment(s) are made by [~ name of issuing bank ~] and make reference to this letter of credit [~ number/letter ~].
Our obligation under this Letter of Credit shall not be affected by any circumstance, claim, or defense, real or personal, as to the enforceability of the Franchise Agreement between United Shipping Solutions, LLC and [name of Franchisee] pursuant to which this Credit was issued; it being understood that our obligation shall be that of a primary obligor and not that of a surety, guarantor, or accommodation maker.

8.    We hereby engage with you that drafts accompanied by documents drawn under and in compliance with the terms of this Credit will be duly honored upon presentation as specified.  This Letter of Credit sets forth in full the terms of our undertaking, and such undertaking shall not in any way be modified, amended, or amplified by reference to any document, instrument, or agreement referred to herein or in which this Letter of Credit is referred to or to which this Letter of Credit relates and any such reference shall not be deemed to incorporate herein by reference any document, instrument, or agreement.

9.    We will promptly notify you of any notice received or action filed alleging the insolvency or bankruptcy of the Bank, or alleging any violations of regulatory requirements that could result in suspension or revocation of the Bank's charter or license to do business.  In the event the Bank becomes unable to fulfill our obligations under this Letter of Credit for any reason, notice shall be given immediately to you.

10.    This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits, 1993 revision, ICC Publication No. 500 ("UCP").  To the extent that applicable provisions of the UCP are not in conflict, in which case applicable provisions of the UCP shall prevail, this credit shall be governed by and construed in accordance with the laws of the United States of America and the State of Utah including the Uniform Commercial Code as in effect in the State of Utah.

[~ name of issuing bank ~]


By:_____
[~ authorized signature of issuing bank ~]

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Attachment 9 – CARRIER PARTNER ADVERTISING & PROMOTION POLICY

USS Carrier Partners allow for certain advertising and promotion support for authorized Third Party Selling Partners representing Carrier services, provided the basic guidelines below are followed.  It is important to remember that use of the Carrier name or logo must be approved by the Carrier prior to publication.

### LOGO USAGE

The Carrier logo and/or name may be used only after written permission has been obtained from the Carrier.

- Logo usage must follow corporate regulations.
- The logo must comply with Carrier basic layout guidelines when used on Third Party printed materials and/or in conjunction with Third Party logos.
- Logo usage may not imply that Carrier is in any way a partner of or a part of the Third Party business or corporation.
- Third Party may not use the Carrier name or logo for decorative purposes (i.e. on the corner of each page, as a background pattern, etc.).

### PHOTOGRAPHY

- Under no circumstances may any photography that is the property of Carrier be used on Third Party printed materials or in Third Party advertising.  The photography that belongs to Carrier has been specifically purchased from photographers to support Carrier marketing efforts.
- If you wish to have photography done that incorporates Carrier packaging and/or personnel, you must receive written permission from Carrier prior to photo shoot and prior to publication.
- This policy applies immediately to any use of photography in any way associated with Carrier regardless of what you have done in the past.  Any prior photos or slides that are in your possession and have been previously used must be returned to Carrier.

### COPY

- Copy published in advertising, collateral or for any other sales and marketing use may not state or imply Carrier is in any way a partner of or a part of your business.  Copy may not imply or give the impression that the piece has been published by Carrier.
- Third Party may not state that you and Carrier offer this service, but instead must indicate that you have made special arrangements, or have an agreement with Carrier that allows you to offer Carrier service to your customers at a favorable rate.
- Third Party may not publish a rate that is lower than a published discount rate currently offered through Carrier marketing, except those offered on personal sales presentations.
- Third Party may publish rates which match Carrier published drop rates, provided it is stated that those rates apply to drop box use only, except those offered on personal sales presentations.

*Any violation of the basic guidelines outlined here may constitute a violation of your Franchise Agreement and result in the termination of that agreement. The undersigned has read, understands and agrees to abide by the terms of the United Shipping Solutions Carrier Advertising and Promotion Policy.*

Honolulu South                    Beidleman                    10-15-04
FRANCHISE                    FRANCHISE PERSONNEL                    DATE

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

Attachment 10 – ELECTRONIC FUNDS TRANSFER AGREEMENT

# Customer Authorization for Recurring Billing

As a duly authorized check signer on the financial institution account identified herein, I authorize United Shipping Solutions Corporate office to perform scheduled or periodic electronic funds transfer debits from my account identified below for payments due or when applicable.

Furthermore, if any such electronic debit(s) should be returned NSF, I authorize to collect such debit(s) by electronic debit and to subsequently collect a returned debit item fee of $20.00 per item by electronic debit from my account identified below.

For accounting purposes, all electronic debits will be reflected in the monthly bank statement that corresponds with the financial institution account identified below.

I understand and authorize all of the above as evidenced by my signature below. **Please attach a voiced check from the account to be debited.**

AUTHORIZING SIGNATURE:_____   DATE:_____

| Financial Institution: | | | Branch: | | |
|---|---|---|---|---|---|
| City: | | State: | | Zip Code: | |
| Transit/ABA #: | | | Account #: | | |
| Payment Start Date: | | | | | |
| Circle one: | Weekly | Monthly | Semi Monthly | Quarterly | Yearly |
| | Other (please explain) | | | | |
| Payment End Date (If applicable): | | | | | |
| Amount of Payment: | | | | | |
| Total Amount Owed (If applicable): | | | | | |
| Number of Payments (If applicable): | | | | | |

# Attach Voided Check Here

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

**Attachment 11 - RECEIPTS**

Receipt

(FRANCHISEE'S COPY)

THIS FRANCHISE AGREEMENT FOR THE **HONOLULU SOUTH** DEVELOPMENT TERRITORY LOCATED IN THE STATE OF **HAWAII** CONTAINS PROVISIONS AND OTHER INFORMATION IN PLAIN LANGUAGE.  READ THE FRANCHISE AGREEMENT CAREFULLY.

IF WE OFFER YOU A FRANCHISE, WE MUST PROVIDE THIS FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS ATLEAST FIVE (5) BUSINESS DAYS BEFORE YOU CAN SIGN THIS FRANCHISE AGREEMENT.

IF WE DO NOT DELIVER THIS FRANCHISE AGREEMENT ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND THE APPROPRIATE STATE AGENCY IDENTIFIED ON EXHIBIT "A" OF THE UNIFORM FRANCHISE OFFERING CIRCULAR.

The respective agencies or agents identified on Exhibit A are authorized to receive service of process for FRANCHISOR in the states indicated if the company is registered in those states.

The effective date of this Franchise Agreement is:

Your signature(s) below indicate that you received this Franchise Agreement on the date(s) indicated below, including the following attachments:

  A.  Development Territory.
  B.  Corporation/Limited Liability Company Partnership Information Sheet.
  C.  Guaranty Agreement.
  D.  Telephone Listing Agreement.
  E.  Employee/Independent Contractor Confidentiality & Non-disclosure Agreement.
  F.  UCC-1 Financing Statement.
  G.  Letter of Credit.
  H.  Sales Guideline Agreement for Resellers.
  I.  Advertising and Promotion Policy for Resellers.
  J.  Financial Statements.
  K.  Electronic Funds Transfer Agreement

| 5-12-04 | | Jim Beidleman |
|---|---|---|
| Date | Signature | Printed Name |

| 5-12-04 | | Matthew Larson |
|---|---|---|
| Date | Signature | Printed Name |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

# UNITED SHIPPING SOLUTIONS, LLC

# FINANCIAL STATEMENTS

## December 31, 2003

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

# CONTENTS

| | Page |
|---|---|
| INDEPENDENT AUDITORS' REPORT | 3 |
| BALANCE SHEET | 4 |
| STATEMENT OF OPERATIONS AND MEMBERS' EQUITY | 5 |
| STATEMENT OF CASH FLOWS | 6 |
| NOTES TO FINANCIAL STATEMENTS | 7 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.



Springer & Company Inc. • Certified Public Accountants • Business Advisors

## INDEPENDENT AUDITOR'S REPORT

To the Board of Directors of
United Shipping Solutions, LLC

We have audited the accompanying balance sheet of United Shipping Solutions, LLC as of December 31, 2003, and the related statements of income, retained earnings, and cash flows for the year then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of United Shipping Solutions, LLC as of December 31, 2003 and the results of its operations and its cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

Springer & Co., Inc.

Sandy, Utah
January 31, 2004

**Members of:**

American Institute of Certified Public Accountants • PCPS AICPA Alliance for CPA Firms
Utah Association of Certified Public Accountants

Springer & Company Inc. • 9653 South 700 East • Sandy UT 84070-3557
ph. 801-565-1201 • fax 801-565-1202
website-www.springercompanycpa.com

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

# UNITED SHIPPING SOLUTIONS, LLC
## BALANCE SHEET
### December 31, 2003

## ASSETS

**CURRENT ASSETS**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 38,115 |
| Accounts receivable | | 789,676 |
| Inventories | | 21,814 |
| Prepaid expenses | | 3,477 |
| TOTAL CURRENT ASSETS | | 853,082 |

| | | |
|---|---|---:|
| EQUIPMENT | | 22,065 |
| TOTAL ASSETS | $ | 875,147 |

## LIABILITIES AND MEMBERS' EQUITY

**CURRENT LIABILITIES**

| | | |
|---|---|---:|
| Accounts payable | $ | 401,908 |
| Current portion of oblication under capital lease | | 2,856 |
| TOTAL CURRENT LIABILITIES | | 404,764 |

| | | |
|---|---|---:|
| OBLIGATION UNDER CAPITAL LEASE | | 1,652 |
| TOTAL LIABILITIES | | 406,416 |
| MEMBERS' EQUITY | | 468,731 |
| TOTAL LIABILITIES AND MEMBERS' EQUITY | $ | 875,147 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## UNITED SHIPPING SOLUTIONS, LLC
### STATEMENT OF OPERATIONS AND MEMBERS' EQUITY
### For the year ended December 31, 2003

**INCOME**

| | | |
|---|---:|---:|
| Shipping revenue | $ 2,324,971 | |
| Initial franchise sales | 1,160,904 | |
| Franchise royalties | 136,138 | |
| Other revenue | 56,647 | $ 3,678,660 |
| | | |
| Cost of shipping revenue | | 2,268,948 |
| GROSS PROFIT | | 1,409,712 |

**EXPENSES**

| | | |
|---|---:|---:|
| General and administrative | 713,537 | |
| Management fees | 171,059 | |
| Consulting fees | 10,718 | |
| Depreciation | 8,515 | 903,829 |
| NET OPERATING INCOME | | 505,883 |

**OTHER EXPENSE**

| | |
|---|---:|
| Loss on disposal of assets | 2,553 |
| NET INCOME | 503,330 |

**MEMBERS' EQUITY**

| | |
|---|---:|
| Balance - Beginning of year | 157,964 |
| Contributions | 211,023 |
| Distributions | (403,586) |
| | |
| Balance - End of year | $ 468,731 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

# UNITED SHIPPING SOLUTIONS, LLC
## STATEMENT OF CASH FLOWS
### For the year ended December 31, 2003

**CASH FLOWS FROM OPERATING ACTIVITIES**

| | | |
|---|---:|---:|
| Net Operating Income | $      503,330 | |
| Adjustment to reconcile increase in net assets to | | |
| cash provided by operating activities: | | |
| Depreciation | 8,515 | |
| Net loss on disposal of assets | 2,553 | |
| (Increase) decrease in operating assets | | |
| Accounts receivable | (703,633) | |
| Inventories | (13,752) | |
| Notes receivable | 10,718 | |
| Prepaid expenses | (1,650) | |
| Increase (decrease) in operating liabilities | | |
| Accounts payable | 320,696 | |
| Net cash provided by operating activities | | $      126,777 |

**CASH FLOWS FROM INVESTING ACTIVITIES**

| | | |
|---|---:|---:|
| Equipment purchases | (11,521) | |
| Net cash used by investing activities | | (11,521) |

**CASH FLOWS FROM FINANCING ACTIVITIES**

| | | |
|---|---:|---:|
| Payments on capital lease obligation | (2,856) | |
| Distributions to members | (192,563) | |
| Net cash used by financing activities | | (195,419) |

| | |
|---|---:|
| NET DECREASE IN CASH | (80,163) |
| CASH AT BEGINNING OF YEAR | 118,278 |
| CASH AT END OF YEAR | $      38,115 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

*NOTE I – ORGANIZATION A..D SUMMARY OF SIGNIFICANT ACCOUNT.. J POLICIES*

*Organization*
United Shipping Solutions, LLC (the Company) was formed as a Utah limited liability company on January 14, 2002. In accordance with the limited liability agreement, the term of the Company shall end on September 12, 2101, unless the Company is dissolved earlier.

The Company is a reseller and franchisor of discounted shipping services through a network of franchisees. The Company collects initial franchise fee income as well as continuing royalties from independently owned and operated franchises throughout the United States. Company profit is dependent on many factors, which include the competitive nature of the shipping industry and available substitutes.

The Company is the trustee of an advertising trust. Such trust collects advertising fees and administers advertising programs for franchisees. As of December 31, 2003, the Company has not collected any advertising fees from its franchisees.

*Cash and Cash Equivalents*
Cash equivalents are highly liquid investments with maturities of three months or less when purchased.

The Company maintains a cash balance with one major bank and, at times, the cash balance may exceed federally insured limits. To date, the Company has not experienced any losses in such accounts.

*Inventory*
Inventory, consisting of shipping products and packaging, is stated at the lower of cost (first-in, first-out method) or market value.

*Equipment*
Equipment is recorded at cost, less accumulated depreciation. Depreciation of property and equipment is computed using the straight-line method over the estimated useful lives of the assets as follows:

| | |
|---|---|
| Furniture and fixtures | 5 years |
| Computer equipment | 3 years |

Costs of renewals and improvements which substantially extend the useful life of the assets are capitalized. Upon retirement, sale or other disposition, the cost and accumulated depreciation are eliminated from the respective accounts and resulting gain or loss is included in operations. Maintenance and repairs are expensed as incurred.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

NOTE 1 - ORGANIZATION AND SUMMARY OF SIGNIFICANT ACCOUNTING
POLICIES (CONTINUE)
*Equipment (Continued)*

The Company reviews its long-live assets for impairment when events or changes in circumstances indicate that the book value of an asset may not be recoverable. The Company evaluates, at each balance sheet date, whether events and circumstances have occurred that indicate possible impairment. In the event that the carrying values of the assets exceed the estimated future undiscounted net cash flows, the carrying values of the assets are reduced appropriately.

*Income Taxes*
Under the income tax provisions applicable to limited liability companies, the Company's taxable earnings or losses are reported in the individual members' income tax returns. Accordingly, no provision has been made for federal or state income taxes in the accompanying financial statements.

*Revenue Recognition*
Franchising revenue consists of initial franchise fees and royalty income. IN accordance with Statement of Financial Accounting Standards (SFAS) No.45 "Accounting for Franchise Fee Revenue," initial franchise fees are recognized as revenue when the Company has substantially performed its obligations under the franchise agreement and continuing royalty fees are recognized as revenue when earned.

*Concentration Risks*
The Company relies on franchise agreements with two key vendors as the basis for reselling and franchising shipping services. Should these agreements not be renewed or should the carriers encounter difficulties or disruptions, there could be a material adverse effect on the results of operations, financial position, and liquidity of the Company and its franchisees.

*Accounts Receivable*
Accounts receivable are generally comprise of franchisee royalty receivables and are stated at the amount management expects to collect from outstanding balances. Management provides for probable uncollectible amounts through a charge to earnings and a credit to a valuation allowance based on its assessment of the current status of individual accounts. Balances that are still outstanding after management has used reasonable collection efforts are written off through a charge to the valuation allowance and a credit to accounts receivable. As of December 31, 2003, management has concluded that realization losses on balances outstanding at year-end will be immaterial.

*Advertising*
Advertising costs are expensed as incurred. During the period ended December 31, 2003, the Company did not incur material advertising costs.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

Note 1 – ORGANIZATION AND SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (CONTINUED)

*Use of Estimates in the Preparation of Financial Statements*

The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

*Recent Accounting Pronouncements*

In June 2001, the Financial Accounting Standards Board (FASB) issued SFAS No. 141, "Business Combinations" and SFAS No. 142, "Goodwill and Other Intangible Assets". SFAS No. 141 requires the purchase method of accounting to be use for all business combinations initiated after June 30, 2001 and prohibits the use of the pooling-of-interests method. The statement also broadens the criteria for recording intangible assets separately from goodwill. SFAS No. 142 changes accounting for goodwill and certain intangible assets with indefinite useful lives from an amortization method to an assessment of impairment method. Under the new method, goodwill and certain intangibles will not be amortized into the results of operations, but will be periodically reviewed for impairment. If this review identifies impairment, it would be included in the results of operations. The Company has adopted the provisions of SFAS No 141 and SFAS No 142 for the period ended December 31, 2002.

Also in June 2001, the FASB issued SFAS No. 143, "Accounting for Asset Retirement Obligations", which requires that the fair value of the liability for asset retirement costs be recognized in an entity's balance sheet, as both a liability and an increase in the carrying value of such assets, in the periods in which such liabilities can be reasonably estimated. It also requires allocation of such asset retirement cost to expense over its useful life. This statement is effective for fiscal years beginning after June 15, 2002. The Company has adopted the provisions of SFAS No. 143 for the period ended December 31, 2002.

In August 2001, the FASB issued SFAS No. 144, "Accounting for the Impairment or Disposal of Long-Lived Assets." SFAS No. 144 addresses financial accounting and reporting for the impairment of disposal of long-lived assets. SFAS No. 144 supersedes SFAS No. 121, "Accounting for the Impairment of Long-Lived Assets and for Long-Lived Assets to Be Disposed Of" and establishes a single accounting model for asset dispositions. The Company adopted the provisions of SFAS No. 144 for the period ended December 31, 2002.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## NOTE 2 – EQUIPMENT

Equipment as of December 31, 2003 is detailed in the following summary:

Cost:

| | | |
|---|---|---:|
| Computer equipment | $ | 28,449 |
| Furniture and fixtures | | 4,732 |
| | | 33,181 |
| Less accumulated depreciation | | (11,116) |
| | | |
| Net book value | $ | 22,065 |

## NOTE 3 – MANAGEMENT AGREEMENT

The Company has entered into an exclusive, oral arrangement with an affiliate, Business Wheel, Inc. (Business Wheel). Under the agreement, Business Wheel has agreed to manage and operate the Company's business and pay specified operating costs in exchange for a management fee to be paid by the Company through monthly installments. As of year-end, the Company has discontinued the contract with Business Wheel and is paying for management through operation of the company in for form of salaries for the officers. For the period ended December 31, 2003, the Company paid $186,384 to Business Wheel for management services and expense reimbursements.

## NOTE 4- RELATED PARTY TRANSACTIONS

The Company uses a billing company that is wholly owned by the investors of the Company. Charges to the Company for billings services totaled $151,058 for the year ended December 31, 2003. The balance due to the billing company as of December 31, 2003 was $3,727.

During the year ended December 31, 2003, the Company sold 17 franchises to the Company's investors totaling $337,446. Of this amount, $211,023 was a non-cash transaction for repayment of initial member capital contributions and $126,423 worth was sold for cash. There was no balance due to the company as of December 31, 2003 for sales of franchises. The amount of accounts receivable due to the Company as of December 31, 2003 from these investors/franchisees totaled $71,303.

## NOTE5- MEMBERS' EQUITY

Five investors initially have invested a total of $225,000. For their $225,000 investment, they have acquired an 18 percent ownership interest in the Company. The Company has agreed to repay these investors the entire amount of their investment prior to distributing any bonuses or profit to the 82 percent owner. Any repayments will take place at the end of each fiscal year and the amount of the distribution will be dependent upon the profitability of the Company, the cash available to the Company, and the anticipated cash requirements for the upcoming fiscal year. No specific timetable has been established for the repayment to these investors and no interest will be paid to them. During the period ended December 31, 2002, the Company distributed $19,131 to one investor in the form of a territory

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

franchise. During the year ended December 31, 2003, the Company distributed and additional $211,023 to six investors in the form of seventeen territory franchises along with cash of $126,423.

## NOTE 6 – OBLIGATION UNDER CAPITAL LEASE

For the period ended December 31, 2002, the Company entered into a capital lease for office equipment. The following is a schedule of the future minimum lease payments as of December 31, 2003:

| | | |
|---|---|---|
| 2004 | $ | 2,856 |
| 2005 | | 1,652 |
| | $ | 4,508 |

## NOTE 7 – COMMITMENTS AND CONTINGENCIES

### *Operating Leases*

In the normal course of business, the Company leases office space and certain equipment with lease terms of one to three years. The Company's rent expense for the period ended December 31, 2003 was $32,359. As of December 31, 2003, the expected future minimum lease payments due under non-cancelable operating leases are as follows:

| | | |
|---|---|---|
| 2004 | $ | 36,000 |
| 2005 | | 15,000 |
| | $ | 51,000 |

### *Guaranteed Franchisee Payments*

The Company has guaranteed payments to freight delivery service providers. In the event that a franchisee should not make the required payment to the shipper, the Company could be liable for the payment.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Exhibit D – FRANCHISEES & TRANSFERS

The following is a list of all franchisees, and telephone numbers as of March 1, 2004.

| Franchise(s) | Contact | Phone |
|---|---|---|
| Anaheim (CA) <br> Huntington Beach (CA) <br> Irvine (CA) | Don Beal | 714-376-8856 |
| Fullerton (CA) <br> Whittier (CA) | Charles Colucci | 949-559-5862 |
| Downey (CA) <br> Garden Grove (CA) <br> Long Beach (CA) <br> Ogden (UT) <br> Salt Lake City West (UT) | Ben Whitesides | 801-479-6606 |
| Mission Viejo (CA) <br> Newport Beach (CA) | Christian Neser | 949-436-0602 |
| Arapahoe County (CO) <br> Denver (CO) <br> Denver West (CO) <br> Douglas County (CO) | Sandi Hendry | 801-725-9515 |
| Boise (ID) <br> Glendale (AZ) <br> Phoenix North (AZ) <br> Phoenix Southwest (AZ) <br> Salt Lake City East (UT) <br> Scottsdale (AZ) <br> Scottsdale Northeast (AZ) <br> Tempe, (AZ) | Dave Hyde | 801-492-7707 |
| Pocatello (ID) | Cam Payne | 208-589-9219 |
| Grand Rapids (MI) | Chris Reinbold | 616-451-0911 |
| Boulder (CO) <br> Fort Collins (CO) <br> Montana (MT) | Roger Cox | 435-835-3018 |
| Las Vegas Central (NV) <br> Las Vegas North (NV) <br> Las Vegas South (NV) | Kevin Olson | 702-873-6070 |
| Everett (WA) <br> Seattle North (WA) <br> Lake Oswego (OR) <br> Portland East (OR) <br> Vancouver (WA) | Angie Arnold | 858-523-9101 |
| Portland West (OR) <br> Tigard (OR) <br> Bend (OR) | Andrew Whitesides | 541-317-9832 |
| Lubbock (TX) | Tim Hamilton | 806-783-8552 |
| Provo (UT) | Newton Adams | 801-376-8016 |
| Coronado (CA) <br> El Cajon (CA) <br> Oceanside (CA) <br> Riverside (CA) | Gary Boyce | 866-245-7967 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

| | | |
|---|---|---|
| Suffolk County East (NY)<br>Suffolk County West (NY) | | |
| Westchester North (NY)<br>Westchester South (NY)<br>Newburgh (NY) | Dave Feinstein | 914-366-0395 |
| Greenwich Village (NY)<br>Midtown West (NY) | Brett Ross | 212-691-6038 |
| Midtown East (NY)<br>Upper East Side (NY) | Dan Barrett | 360-966-7777 |
| Colorado Springs (CO) | Bryan Story | 719-339-4521 |
| Hoffman Estates (IL) | Jim O'Brien | 312-944-9443 |
| Bristol County (MA)<br>Brockton (MA) | Bob Udulutch | 781-753-3102 |
| Marietta (GA) | Bartie Woods | 404-242-8040 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

| Location | Name | Phone |
|---|---|---|
| Encinitas (CA)<br>La Jolla (CA) | Eric Rauterkus | 619-379-5119 |
| Ontario (CA)<br>Pomona (CA) | Kendall Norman | 909-549-6655 |
| Sacramento North (CA)<br>Sacramento South (CA) | David Nichelson | 323-365-0688 |
| Fresno East (CA)<br>Fresno West (CA) | Rick Allred | 801-227-0529 |
| Adams County (CO) | Magnus Edling | 801-352-7483 |
| Bellevue (WA)<br>Kent (WA) | Ashley Caldwell | 425-466-9942 |
| Carrollton (TX)<br>Dallas (TX)<br>Denton (TX) | Ted Autry | 972-312-9551 |
| Albuquerque East (NM)<br>Albuquerque West (NM) | Joel Petersen | 505-507-7447 |
| Seattle South (WA) | William Whitham | 425-444-4100 |
| Placerville (CA)<br>Roseville (CA) | Brandon Farr | 916-225-7447 |
| Hartford (CT) | George Ammirato | 413-562-2417 |
| Reno (NV) | Chris Dayton | 775-826-2366 |
| El Paso (TX) | Alicia Subia | 915-892-5279 |
| Boca Raton (FL) | Eric Mitchell | 800-790-5130 |
| Bergen County South (NJ) | Mike Fisher | 877-744-7872 |
| Middlesex (NJ) | Chad Wiley | 718-490-9910 |
| Fort Worth East (TX)<br>Fort Worth West (TX) | Steve Christie | 781-753-3101 |
| Nassau County Central (NY)<br>Nassau County East (NY)<br>Nassau County West (NY)<br>Suffolk County Central (NY) | Matt Lulley | 631-951-9623 |

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

Exhibit E – FRANCHISE REFERRAL AGREEMENT

# Franchise Referral Agreement

This Franchise Referral Agreement ("Agreement") is entered into by and between
_____ ("Referring Franchise") of the_____
Franchise and _____ ("Franchise Territory Owner") of the
_____ Franchise as of _____, 2003.

The above named parties agree to abide by the terms of the Franchise Referral Agreement outlined herein:

This Franchise Referral Agreement is a:

- *Blanket Agreement:*      *[yes]   [no]*

- *Per Account Agreement:* [_____].

## Scope:

This agreement encompasses all customer shipping activities conducted within the United Shipping Solutions Franchise System.

## Customer Solicitation:

Referring Franchise will notify Franchise Territory Owner of prospective customer prior to soliciting customer.

The Franchise Territory Owner and Referring Franchise agree to work together in the best interest of the customer and to the mutual benefit of both Franchise parties when determining the sales process, presentations, rate structure and routine account maintenance.

## Margin Sharing:

Franchise Territory Owner and Referring Franchise agree to the following percentage Net Margin split:

| Service Type | Territory Owner | Referring Franchise |
|---|---|---|
| Overnight | | |
| Next Afternoon | | |
| Second Day | | |
| Ground Delivery | | |
| Freight | | |
| In-state Same Day | | |

*Net Margin Defined: "Net Margin is defined as the total customer charges, less Franchise cost to carrier, less billing and invoicing, less collections, less marketing/advertising, and less royalty costs."*

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Financial Management:

In the event that the customer is late on a payment, or is in default:

- Territorial Owner will make **no** payment to the Referring Owner until customer payment is current.
- Territorial Owner reserves the sole right to terminate the further delivery of shipping services to the customer.

## Shipment Credit:

The Franchise Territory Owner shall retain 100% of the shipment credit towards Franchise minimums.

## Account Management:

The Franchise Territory Owner is responsible for the routine management of the customer, in addition to paying the cost of:

- Carrier(s)
- Collections
- Royalty
- Billing & Invoicing
- Marketing/Advertising
- Miscellaneous cost

Both parties agree to work together in the best interest of the customer and to the mutual benefit of both parties when to retain and manage the customer account.

## Termination of Referral Agreement:

This agreement will be terminated upon:

- The sale of the Referring Owner's franchise in which the Referral Agreement resides. The ownership of all customer accounts covered by this agreement will be transferred to the Territorial Owner.
- The sale of the Territorial Owner's franchise in which the customer resides. The ownership of all customer accounts covered by this agreement will be transferred to the new owner of the Territorial Owner's franchise.
- The event that Franchise Territory Owner and Referring Franchise mutually agree to terminate agreement.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the day and year first above written.

FRANCHISE TERRITORY OWNER:          REFERRING FRANCHISE:

_____          _____
(Franchise Owner/Representative)          (Franchise Owner/Representative)

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

# National Account Policy

## National Account Definition:

- *A National Account is defined as an account with the corporate office residing within a Franchise Development Territory with multiple offices located throughout the United States and abroad, where the shipping charges are paid at the branch office and/or corporate office level.*

## National Account Process:

Prior to setting up and billing an account with a branch office outside of your Franchise Development Territory, you must:

1. Notify the owner of the Development Territory (Franchise or Franchisor) where the branch office resides that you are going to add the branch office to your Franchise under the National Account.

2. Document notification in writing (email preferable) to the controlling Franchise or Franchisor. Forward documentation to the Support Center for filing where the Franchisor is not the controlling Franchise.

## Shipment Credit:

The Franchise in which the corporate office of the National Account resides retains all shipment credit towards Franchise minimums.

## Account Management:

The Franchise in which the corporate office of the National Account resides is responsible for the routine management of the National Account, in addition to, paying the cost of:
- Carrier(s)
- Collections
- Royalty
- Billing & Invoicing
- Marketing/Advertising
- Miscellaneous

## Margin Sharing:

The Franchise in which the National Account's *corporate office* is located retains:
- One hundred-percent (100%) of the "*Net Margin*" for all branch locations where the National Accounts' corporate office pays the shipping charges or;

- Sixty-percent (60%) of the "*Net Margin*" for shipments tendered under the National Account where each branch office pays their own bills.

The Franchise in which the *branch office* is located retains forty-percent (40%) of the "*Net Margin*" for shipments tendered under the National Account.

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

**Exhibit G – RECEIPTS**

Receipt

(Your-Copy)

**THIS OFFERING CIRCULAR FOR THE STATE OF <u>HAWAII</u> SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.**

**IF WE OFFER YOU A FRANCHISE, WE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIST OF:**

| | |
|---|---|
| **A.** | **THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR** |
| **B.** | **10 BUSINESS DAYS BEFORE SIGNING ANY BINDING AGREEMENT; OR** |
| **C.** | **10 BUSINESS DAYS BEFORE ANY PAYMENT TO US.** |

**YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST 5 BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.**

**IF WE DO NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C.  20580 AND THE APPROPRIATE STATE AGENCY IDENTIFIED ON EXHIBIT "B."**

The respective agencies or agents identified on Exhibit A are authorized to receive service of process for USS in the states indicated if the company is registered in those states.

The effective date of this offering circular is:

Your signature(s) below indicate that you received this offering circular on the date(s) indicated below, including the following Exhibits:

| | |
|---|---|
| A. | Agencies/Agents for Service of Process. |
| B. | Franchise Agreement and Related Agreements |
| C. | Financial Statements |
| D. | FRANCHISEES |
| E. | Inter Franchise Referral Agreement |
| F. | National Account Policy |
| G. | Receipts |
| H. | Confidentiality Agreement |

5- 12.- 04
_____
Date

Signature

J- Beidleman
Printed Name

5-12-04
_____
Date

Signature

Matthew Larson
Printed Name

USS Non-Registration State UFOC 04.00

54

Jim Beidleman **HONOLULU NORTH** (251) 5/6/04

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.

## Exhibit H - CONFIDENTIALITY AGREEMENT

### Confidentiality Agreement

(Your-Receipt)

The undersigned reader acknowledges that the information provided in this Uniform Offering Circular, Franchise Agreement and related documents are confidential, therefore, the reader agrees not to copy, distribute, sell, or disclose any information without the express written permission of UNITED SHIPPING SOLUTIONS.

The reader acknowledges that the information to be furnished in this Uniform Franchise Offering Circular, Franchise Agreement and related documents, is in all respects confidential in nature, other than information which is in the public domain through other means and that any disclosure or use of same by the reader may cause serious harm or damage to UNITED SHIPPING SOLUTIONS.

If you choose not to proceed with a purchase of a UNITED SHIPPING SOLUTIONS Franchise or upon request from UNITED SHIPPINNG SOLUTIONS, the UNITED SHIPPING SOLUTIONS Uniform Franchise Offering Circular, Franchise Agreement and related documents are to be immediately returned, within 15 business days from initial receipt, to UNITED SHIPPINNG SOLUTIONS.

UNITED SHIPPING SOLUTIONS will pursue any and all legal means to enforce this agreement and undersigned will be responsible for any and all legal costs associated with the enforcement of this agreement, as provided by law.

_____
Signature

_____
Name (typed or printed)

_____
Date

_____
USS Witness

_____
Date

Confidential Document, do not copy without express written consent from United Shipping Solutions, LLC.